# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

SHAWN M. GARVIN,                      :
SECRETARY OF THE                      :
DELAWARE DEPARTMENT OF                :
NATURAL RESOURCES &                   :       C.A. No. S18M-10-040 JJC
ENVIRONMENTAL CONTROL,                :
                                      :
   Plaintiff,          :
                                      :
 v.                              :
                                      :
JOSEPH W. BOOTH,                      :
MARGARET A. BOOTH, &                  :
THORO-KLEEN, INC.,                    :
                                      :
   Defendants.          :
                                      :

## OPINION & ORDER

Submitted: November 19, 2021
Decided: January 27, 2022

*Upon Plaintiff's Motion for Summary Judgment* -
**GRANTED**

Devera B. Scott, Deputy Attorney General, Department of Justice, Dover, Delaware, William J. Kassab, Deputy Attorney General, Department of Justice, New Castle, Delaware, and Kayli H. Spialter, Deputy Attorney General, Department of Justice, Wilmington, Delaware, *Attorneys for the Plaintiff.*

Christopher M. Coggins, Esquire, Coggins Law, LLC, Wilmington, Delaware, *Attorney for the Defendants.*

**Clark, R. J.**

Plaintiff Shawn M. Garvin, as Secretary of the Delaware Department of Natural Resources and Environmental Control (hereinafter both the Secretary and the Agency are collectively referred to as "DNREC") sues Defendants Joseph Booth, Margaret Booth, and Thoro-Kleen, Inc. (hereinafter collectively the "Booths"). In DNREC's suit, it seeks reimbursement from the Booths for payments that it made to a brownfield developer's contractor. Specifically, DNREC paid the contractor for the studies and planning necessary to address releases of perchloroethylene ("PCE") and trichloroethylene ("TCE") at the former Thoro-Kleen Dry Cleaning and Laundry site (the "Site") in Georgetown. The Site is a certified brownfield and DNREC used funds from Delaware's Hazardous Substance Cleanup Fund (the "Fund") to pay the contractor.[1]

This decision addresses DNREC's motion and the Booths' cross-motion for summary judgment. DNREC contends that there are no material issues of fact regarding the Booths' obligation to reimburse it for what it paid the contractor. In contrast, the Booths allege that DNREC identifies no recoverable damages because amounts paid to the contractor of a brownfield developer do not qualify as "remedial costs incurred" by DNREC. Rather, the Booths contend that DNREC's payments to the contractor were nothing more than "public assistance." Accordingly, the Booths argue that Delaware's Hazardous Substances Cleanup Act ("HSCA" or the "Act") does not permit DNREC to recover the costs.[2]

For the reasons discussed below, brownfield funds that DNREC pays to a brownfield developer's contractor are recoverable costs pursuant to one of HSCA's recovery provisions, 7 *Del. C.* § 9109(e) ("Section 9109(e)"). Because DNREC's payments are remedial costs incurred as contemplated by Section 9109(e), and

---

[1] *See* 7 *Del. C.* § 9113 (creating the Hazardous Substance Cleanup Fund).
[2] *Id.* §§ 9101-9126.

because there are no genuine issues of material fact regarding the amount DNREC seeks, the Court grants summary judgment in favor of DNREC.

## I.    FACTS OF RECORD AND PROCEDURAL HISTORY

This decision resolves issues that followed an October 31, 2017 Order (the "Order") issued by DNREC.  The Order declared the Booths to be liable for environmental contamination at the Site.  Because the procedural background is so important in this case, the Court will discuss it in some length.   It is appropriate to do so because (1) the procedural history became so distorted and (2) the parties' procedural choices that caused those disconnections dictate the results in this case. The consequences of the parties' choices benefit DNREC, in part (by fixing the Booths' liability), and the Booths, in part (by limiting the amount DNREC can recover).

Accordingly, the Court explains this history in detail, not with the intent to be critical, but rather to explain how those choices dictate the result.  After the Court discusses the history, it will highlight the facts in the summary judgment record that relate to the amount DNREC seeks.

### A. Procedural and Other Basic Background

Mr. and Mrs. Booth have owned the Site since September 2, 1986.   When they acquired title to the real estate, they also acquired the dry-cleaning business that operated there.  They ran the business until September 2010.   After they ceased operations, DNREC sent the Booths a January 2014 notice of violation.  In that notice, DNREC contended that the Booths were potentially responsible parties for the release of PCE and TCE into the Site's soil and groundwater.

In that notice of violation, DNREC suggested that the Booths participate in DNREC's Voluntary Cleanup Program, but the Booths declined.  After several years

3

of back and forth, Secretary Garvin and the Booths met to discuss the case in May 2017. At that meeting, the parties discussed the Booths' claimed innocent landowner defense pursuant to 7 *Del. C.* § 9105(c). The Booths contended that they qualified as innocent landowners because the releases occurred before they assumed control of the Site and because they met other requirements for the defense. In response, the Secretary told them that the defense did not apply and that he would stand by his employees' recommendations regarding their liability. Approximately six days later, a DNREC program manager, Timothy Ratsep, sent the Booths a written settlement demand seeking to resolve the matter.[3]

After the Booths met with Secretary Garvin and received the letter, they made their first unconventional procedural choice. Namely, they attempted to appeal both matters to the Environmental Appeals Board (hereinafter referred to as the "EAB" or "the Board").[4] Specifically, they attempted to appeal (1) the Secretary's oral statement wherein the Secretary told the Booths that he considered them liable, and (2) Mr. Ratsep's letter.

While the parties began litigating that appeal before the Board, DNREC issued its first and only written order on the matter on October 31, 2017 (again, hereinafter the "Order"). DNREC maintained at that point, and this Court and the Delaware Supreme Court later agreed, that the Order constituted its final agency action regarding the matter.[5]

In the Order, DNREC rejected the Booths' innocent landowner defense, and found them liable for the release of PCEs and TCEs at the Site.[6] It also ordered the

---

[3] *See* Appellant's Reply Br., D.I. 13, at Ex. 48, *Booth v. Garvin*, 2019 WL 462486 (Del. Super. Feb. 6, 2019) (including Mr. Ratsep's letter as an exhibit).

[4] EAB Appeal No. 2017-08.

[5] *Booth v. Garvin*, 2019 WL 462486 (Del. Super. Feb. 6, 2019) (finding that neither the Secretary's oral statement nor the demand letter constituted final agency action and finding the Order to be the only appealable agency action), *aff'd*, 217 A.3d 700 (Del. 2019) (TABLE).

[6] Def. Mot. Summ. J., Ex. 6.

Booths, *inter alia*, to hire a consultant and provide DNREC with a completed remedial investigation and feasibility study to address necessary remedial measures.[7] Finally, the Order informed the Booths that they had the right to appeal that decision to the Board.[8] It also separately recognized that the Booths had an existing hearing date in November 2017 for their first filed EAB appeal.[9]

The Booths then timely appealed the Order.[10] At that point, DNREC urged them to consolidate their two EAB appeals so the Board could address the substantive matters in the case.[11] In fact, consolidating the two appeals at that point would have provided the only practical solution to the problem that the Booths litigation choices had caused. The Booths nevertheless made another unusual procedural decision – they rejected the proposal.[12]

The Board then continued the hearing that had been scheduled for November 2017. Again, that first EAB hearing would have addressed only the Booths' attempt to appeal the Secretary's oral statement and the settlement demand. Because the Booths opposed consolidating the two appeals, DNREC filed a motion requesting that the Board consolidate them.[13] At the same time, DNREC moved to dismiss the first appeal because the second one was the only appeal that could address the outstanding issues in the case.

At an April 2018 EAB hearing, the EAB dismissed the Booths' first appeal.[14] That made DNREC's motion to consolidate the two appeals moot.[15] Despite the

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] EAB Appeal No. 2017-13.
[11] Appellant's Op. Br., D.I. 10, at Ex. 35, *Booth v. Garvin*, 2019 WL 462486 (Del. Super. Feb. 6, 2019).
[12] *Id.* ¶ 14.
[13] *Id.* ¶ 16.
[14] Tr. Booth, EAB Appeal No. 2017-13, at 71 (Apr. 10, 2018).
[15] *Id.*

dismissal, the Booths retained the ability to contest the Order through their second appeal which remained on the EAB's docket.

Until the April 2018 EAB hearing, DNREC had voluntarily stayed enforcement of the Order. It was at that point that the Booths filed their Superior Court appeal.[16] Shortly thereafter, DNREC pressed to secure an EAB hearing date to address the enforceability of the Order. The Booths, however, did not cooperate.[17] In fact, they attempted to delay scheduling one.[18] Apparently, they remained confident that they would prevail in their then-pending Superior Court appeal.

Because the Booths would not cooperate in prosecuting their second EAB appeal, DNREC filed a complaint in Sussex County Superior Court on October 11, 2018. In the complaint, it (1) sought a declaratory judgment that the Order was final because the Booths, who had appealed the Order to the EAB, would not accede to an EAB hearing date, and (2) sought a damages award pursuant to HSCA for the Booths refusal to comply with the Order.

The Booths then promptly filed a motion to dismiss DNREC's complaint.[19] A few days later, the Booths then inconsistently filed an answer to the complaint.[20]

By the time the Booths filed their Rule 12(b)(6) motion and answer, the Board had set a hearing date for the second appeal – on November 28, 2018. In fact, the Booths acknowledged the upcoming EAB hearing in their motion to dismiss. They cited the upcoming hearing as the principal reason that the Court should dismiss DNREC's Superior Court complaint.

---

[16] Notice of Appeal, D.I. 1, ⁋ 11, *Booth v. Garvin*, 2019 WL 462486 (Del. Super. Feb. 6, 2019).
[17] *See* Pl. Compl., D.I. 1, ⁋ 24.
[18] *See* Def. Mot. Summ. J., D.I. 112, Ex. 24, at 2 (providing E-mail correspondence between the Booths and the EAB chairman, demonstrating the Booths' unwillingness to schedule a hearing date).
[19] Def. Mot. to Dismiss, D.I. 2.
[20] Def. Ans. to Compl., D.I. 4.

With the EAB hearing set, it seemed likely that DNREC's suit and the Booths' pending Superior Court appeal would either resolve or, at least, the parties would procedurally reset the matter so the Board could decide the case on its merits. After all, the intended scope of the upcoming EAB hearing included all substantive issues regarding the Site and the Booths' defenses to liability under the Order.

The potential procedural reset, however, did not occur. Rather, the Booths made a third unusual procedural choice. Namely, they appeared at the Board hearing, but then abruptly withdrew their second appeal.[21] When doing so, they had set up for the hearing, discussed the matter with their counsel who attended, and then closed their books and binders and left. At a later oral argument, their counsel confirmed that the Booths refused to participate in the only venue that could appropriately address their concerns. They refused because they believed DNREC and the EAB to be so intertwined that the EAB would not be fair, and they felt the matter was destined for Superior Court in any event.[22]

Then, after the Booths refused to participate in the Board hearing, the Court held argument in December 2018 to consider (1) the Booth's motion to dismiss DNREC's complaint, and (2) the Booths' Superior Court appeal of the Secretary's oral statement and the demand letter. At that argument, the Booths withdrew their motion to dismiss the complaint.

The parties then engaged in a lengthy argument about the propriety of the Booths' attempt to appeal the oral statement and settlement demand letter. In a February 6, 2019 decision, the Court explained why neither the Secretary's oral statement nor Mr. Ratsep's settlement demand constituted final agency action that

---

[21] Tr. Oral Argument, D.I. 24 at 3 & 15, *Booth v. Garvin*, 2019 WL 462486 (Del. Super. Feb. 6, 2019).

[22] *Id.*

they could appeal.[23]   As a result, the Court dismissed the appeal.[24]   When the Court explained its reasoning for doing so, it recognized the unfortunate position that the Booths had placed themselves in when they chose to withdraw their only viable administrative appeal.[25]   The Booths appealed the dismissal to the Supreme Court, which affirmed the Superior Court's decision.[26]

Because the Booths withdrew their EAB appeal, the Order became final by operation of law.[27]   As the Court explained in its Memorandum Opinion of July 10, 2019, the doctrine of issue preclusion barred the Booths from contesting the findings outlined in the Order.[28]   Namely, the Booths had a full and fair opportunity to contest those findings before the Board.[29]   Because they refused to do so, they may not now contest what they had the opportunity to contest before the proper venue, the EAB.[30]

Furthermore, as the Court explained in its July 2019 decision, the then-final Order addressed every element necessary to substantiate their liability for the releases and their obligation to remedy those releases.[31]   Namely, the Order required the Booths to pay planning and study costs necessary to remediate the Site.[32]   As a result, the Court granted partial summary judgment regarding the Booths' liability for refusing to comply with the Order.[33]   Because DNREC withdrew its request for clean-up costs at oral argument, the Court held the Booths strictly liable for all

---

[23] *See Booth v. Garvin*, 2019 WL 462486 (Del. Super. Feb. 6, 2019) (addressing whether an oral statement and a letter can be appealable action in the context of EAB appeals), *aff'd*, 217 A.3d 700 (Del. 2019) (TABLE).

[24] *Id.*

[25] *Id.* at *5.

[26] *Booth v. Garvin*, 2019 WL 4180620, at *1 (Del. Sept. 4, 2019).

[27] 7 *Del. C.* §§ 6008, 6009(a); *Garvin v. Booth*, 2019 WL 3017419 (Del. Super. July 10, 2019).

[28] *Garvin*, 2019 WL 3017419, at *5.

[29] *Id.*

[30] *Id.*

[31] *Id.* at *6.

[32] *Id.* at *2.

[33] *Id.* at *7.

investigation, study, and planning costs for the Site that DNREC could prove at trial. More particularly, the Court identified the only remaining factual issues to be as follows:

> DNREC's claim for damages under HSCA, however, remains in the case. Under HSCA '[t]he Secretary may bring an action in Superior Court against any potentially responsible party to collect remedial costs incurred by the Secretary, or for a party's refusal to comply, without sufficient cause, with an order issued under subsection (a) or (b) of this Section.'[34]

In this case, Section 9109(e) gave DNREC two independent, though overlapping, claims: (1) one for failure to comply with an Order that required the Booths to pay planning and study costs; and (2) a second claim permitting DNREC to independently collect the same remedial costs in a Superior Court action.

Given the Court's decision, the matter proceeded toward a February 2020 trial. In October 2019, however, DNREC requested a continuance that the Booths opposed.[35] Notwithstanding that DNREC had previously sought full summary judgment, DNREC's requested the continuance because it remained unable to quantify what damages it suffered before the scheduled trial.[36]

After considering the parties' positions, the Court granted DNREC's request.[37] At argument on the matter, however, DNREC could not provide the Court an estimated time frame for when it could fully quantify its study and planning costs. Given (1) the Booths' opposition to a continuance, (2) the fact that DNREC filed the suit before it could substantiate its damages, (3) DNREC's represented inability to provide *any estimate* as to when it would be able to quantify its damages, and (4) the

---

[34] *Id.*
[35] *Garvin v. Booth*, 2019 WL 5654661, at *1 (Del. Super. Oct. 31, 2019).
[36] *Id.*
[37] *Id.*

9

uncertainty and hardship the ongoing litigation was causing the Booths, the Court granted the continuance for a moderate duration.[38] After balancing the afore-mentioned concerns, the Court also included a six-month deadline for DNREC to identify the study and planning costs that it sought to recover.[39] When doing so, the Court included the following in the Order:

> [a]ny such costs not fully identified and fairly presented to the Booths before [the expiration of the additional six-month] deadline will be barred from introduction at trial pursuant to Superior Court Civil Rule 37(b)(2)(B).[40]

There was one last matter of procedural importance. Namely, the timing and manner of DNREC's identification of its damages in discovery limits what DNREC may now seek. When DNREC provided notice of its damages to the Booths, it did so with a May 2020 cover letter and attached invoices. The cover letter, that it sent almost six months to the day after the Court's Rule 37 Order, provided that it sought $293,076.88 from the Booths.[41] The supporting invoices, however, totaled just over one-third of that amount.[42] As a result, during the current summary judgment briefing, DNREC concedes that the invoices and documents that it had attached to the letter substantiated only $105,464.87 in costs paid to Ten Bears.[43] Because of the Court's Rule 37(b)(2)(B) order and because the parties conducted damages discovery in reliance on what DNREC provided in its May 2020 letter, DNREC's damages claim is now limited to $105,464.87.[44]

---

[38] *Id.* at *2.
[39] *Id.*
[40] *Id.* Superior Court Civil Rule 37(b)(2)(B) provides the Court the discretion to "make such orders in regard to [the failure to produce evidence in discovery by] prohibiting [a] party from introducing designated matters into evidence."
[41] Pl. Mot. Summ. J., Ex. A at 2.
[42] *Id.* at 13, 19, 39, 47, 52, 112, 119, 125, 131, 137, 144, 149, 157, and 166.
[43] Pl. Ans. Br. at 7.
[44] DNREC provided invoices in its May 2020 damages letter that also supported an additional $8,508.16 in oversight costs. DNREC, however, concedes in its reply brief that it seeks only

The matters presently before the Court are the parties' cross-motions for summary judgment. In this decision, the Court considers what is DNREC's second-filed summary judgment motion. Although the Court had previously denied DNREC's motion for full summary judgment because DNREC could not quantify an amount certain of damages, the parties agree that the Court should consider the present cross-motions. Given what is now a fully developed summary judgment record, the Court will consider the cross-motions (including DNREC's renewed motion for summary judgment for damages) to best conserve judicial and party resources.

### B. Evidence of Record Regarding Damages

The parties' cross-motions address what is the only remaining issue: the amount, if any, due DNREC. The following includes one part that consists of undisputed facts and a second part that includes facts that the Booths argue remain in dispute. On one hand, the Court considers, as undisputed, those facts that are necessary to determine whether DNREC's payments from the Fund to a third-party brownfield contractor, Ten Bears Environmental Associates Co. ("Ten Bears"), may be recovered from the Booths. On the other hand, because the Booths do not concede the appropriateness of the *amount* sought by DNREC, the facts of record that are relevant to the amount DNREC paid Ten Bears are viewed in the light most favorable to the Booths.

On November 2, 2016, DNREC designated the Site as a brownfield pursuant to 7 *Del. C.* § 9123(3) and DNREC regulations.[45] At that time, Restoration Worship

---

$105,464.87, which again represents amounts paid to Ten Bears. Accordingly, the Court deems DNREC's request for $8,508.16 in oversight costs to be withdrawn.
[45] Def. Op. Br. Ex. 2.

Center, Inc. ("Restoration Worship") applied for brownfield certification.[46] The Booths owned the property and Restoration Worship hoped to acquire it for use as a church. DNREC and Restoration Worship then entered a brownfield development agreement on November 29, 2016.[47]

Restoration Worship next retained Ten Bears to serve as its environmental consultant for the project.[48] By affidavit, the President of Ten Bears confirmed the following: (1) all services that it provided were necessary for Restoration Worship to comply with its brownfield development agreement with DNREC;[49] (2) all services that Ten Bears provided were coordinated with and approved by DNREC;[50] (3) since being retained, Ten Bears has submitted its invoices directly to DNREC for payment;[51] (4) DNREC reviewed the invoices and documentation and approved or rejected the amounts before paying Ten Bears with brownfield grant funds;[52] (5) all work performed by Ten Bears had to be pre-approved by DNREC, pursuant to pre-approved work plans;[53] and (6) although DNREC's payments of the invoices were discretionary, Ten Bears had a reasonable expectation that DNREC would pay its invoices with brownfields grant funds.[54] There is no dispute that DNREC paid Ten Bears directly from the Fund.

Furthermore, Ten Bears had no first-party contractual relationship with DNREC.[55] As recited in the affidavit, DNREC provided Ten Bears no guarantee that DNREC would pay its bills from the Fund because DNREC had the discretion

---

[46] *Id.*
[47] Def. Op. Br. Ex. 5 at 16.
[48] *Id.* at Ex. 7, Greer Aff., ¶ 12.
[49] *Id.* ¶ 16.
[50] *Id.* ¶ 19.
[51] *Id.* ¶ 33.
[52] *Id.* ¶¶ 34, 35, and 36.
[53] *Id.*
[54] *Id.* ¶ 41.
[55] *Id.* ¶ 40.

to withhold payment.[56]   In addition, Ten Bears understood that DNREC's payments from the Fund were contingent upon whether funds were available to cover the expenses.[57]

DNREC further supports its summary judgment motion with affidavits from Ten Bears  that certify the reasonableness, relatedness, and necessity of the planning and study costs that Ten Bears presented to DNREC.[58]   The certifications, with attached invoices, confirm that Ten Bears submitted the invoices to DNREC and then received brownfield grant funding from the Fund, for each one.   In total, the invoices and accompanying affidavits, substantiate that DNREC paid Ten Bears $105,464.87.[59]

The Booths, on the other hand, identify no evidence of record that demonstrates a factual issue regarding the amount.  Likewise, they identify no likely admissible evidence that could support  a reasonable jury's finding that Ten Bears' work and their bills were unnecessary, unreasonable, or unrelated to DNREC-approved work at the Site.   Nor have the Booths identified any expert witnesses that could testify that the work performed was not necessary to address PCE and TCE contamination at the Site.   Importantly for purposes of determining the damages due, Ten Bears work, as outlined in the invoices, *matches* the scope of the work required by the Order.[60]

As a final matter regarding the evidence of record, the Booths have also not identified facts that support any cause, much less good cause, for their refusal to comply with the Order.  Rather, they instead rely solely on (1) their legal defenses

---

[56] *Id.*

[57] *Id.* ¶ 41.

[58] Pl. Mot. Summ. J., Ex. A at 10, 18, 36, 44, 49, 109, 116, 122, 128, 134, 142, 146, 155, and 156 [hereinafter "Certification Affidavits"].

[59] *Id.* at 13, 19, 39, 47, 52, 112, 119, 125, 131, 137, 144, 149, 157, and 166 [hereinafter "Ten Bears Invoices"]

[60] *Cf. id.*; Pl. Mot. Summ. J., Ex. B at 173.

that brownfield grant payments are not "remedial costs incurred" as that phrase is used in Section 9109(e), and (2) their expectation that they will prevail when they appeal this Court's final decision.

## II.     THE PARTIES' CONTENTIONS

DNREC seeks to recover planning and study costs necessary to remediate the Site because the Booths are strictly liable.   Given the Court's prior decision applying issue preclusion to those matters addressed in the Order, DNREC seeks summary judgment for $105,464.87 in remedial costs.   It submits that HSCA, and specifically 7 *Del. C.* § 9109(e), permit it to recover those costs under two independent avenues: that is, because (1) the Booths did not comply with the Order and (2) it has an independent, though completely overlapping, claim against the Booths for remedial costs incurred.   In support of its claims, it provides multiple affidavits attesting to the reasonableness, relatedness, and necessity of those costs.

In contrast, the Booths maintain that they are not liable to reimburse DNREC because brownfield funds paid the bills.    In so arguing, the Booths contend that HSCA and the regulations DNREC promulgated to implement HSCA do not expressly provide DNREC the authority to recover what it paid out through the brownfield grants.

## III.   STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[61]   Generally, the Court must view the evidence in the light most favorable to the non-moving party.[62]   First,

---

[61] Super. Ct. Civ. R. 56(c); *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[62] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).

14

the initial burden of proof is on the moving party.[63]  Then, if the movant meets his or her initial burden, the burden shifts to the non-moving party to demonstrate the existence of material issues of fact.[64]  In the event of this shift, it is not enough for the opposing party "merely to assert the existence of disputed issues of fact."[65]  Rather, the non-movant must identify evidence of a material fact in dispute that are sufficient to withstand a motion for judgment as a matter of law and to support the verdict of a reasonable jury.[66]  Affidavits may be submitted for the purpose of demonstrating a material issue of fact at the summary judgment stage.[67]

When parties file cross-motions for summary judgment, the standard for summary judgment is the same.[68]  In this regard, "the existence of cross-motions for summary judgment does not act as a *per se* concession that there is an absence of factual issues."[69]  Nevertheless, when cross-motions for summary judgment are filed on a particular issue and neither party argues that there is a relevant dispute of fact regarding that issue, the Court may consider the motions as a stipulation for decision on the record submitted by the parties.[70]  For any issue the parties do not so concede, the Court must view the record in the light most favorable to the non-movant.

## IV.   ANALYSIS

The central issue is whether DNREC's payments to Ten Bears qualify as "remedial costs incurred" pursuant to Section 9109(e).   If they do, then DNREC prevails.  If they do not, then the Booths prevail on summary judgment.

---

[63] Super. Ct. Civ. R. 56(e); *Moore*, 405 A.2d at 680 (Del. 1979).
[64] *Moore*, 405 A.2d at 682 (citing *Hurtt v. Goleburn*, 330 A.2d 134 (Del. 1974)).
[65] *Brzoska*, 668 A.2d at 1364.
[66] *Lum v. Anderson*, 2004 WL 772074, at *2 (Del. Super. Mar. 10, 2004).
[67] Super. Ct. Civ. R. 56(e); *Lynch v. Athey Products Corp.*, 505 A.2d 42, 45 (Del. Super. 1985).
[68] *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1050 (Del. Super. 2001).
[69] *Id.*
[70] Super. Ct. Civ. R. 56(h); *Sycamore Partners Mgmt., L.P. v. Endurance Am. Ins. Co.*, 2021 WL 4130631, at *9 (Del. Super. Sept. 10, 2021).

**A. DNREC's brownfield grant payments constitute remedial costs incurred pursuant to 7 *Del. C.* § 9109(e).**

The Booths contend that DNREC did not "incur" any costs in this case. Rather, they contend that only Restoration Worship incurred costs based upon Ten Bears' work at the Site. Specifically, the Booths argue that Section 9109(e)'s use of the word "incurred" limits DNREC's ability to recover payments to those that DNREC was required by law to make, and no others. Furthermore, the Booths argue that since DNREC had the discretion to withhold payments from Ten Bears, DNREC did not incur the costs.

DNREC counters by relying upon the plain meaning of the terms at issue and by asking the Court to consider HSCA in context. Because the parties file cross-motions on this issue, the Court will treat this issue of statutory construction as one stipulated to be decided by the Court on an undisputed record.

Statutory interpretation is the responsibility of the courts.[71] Neither HSCA nor DNREC's regulations define the phrase "remedial costs incurred" as found in Section 9109(e). The Court therefore must apply well-recognized rules of statutory interpretation. First and foremost, when a court interprets a statute, the plain language controls if there is no ambiguity -- Section 9109(e) contains no such ambiguity.[72] Rather, the provision has one reasonable interpretation: an interpretation that provides DNREC the ability to recover money it pays from the Fund to remediate a certified brownfield.

---

[71] *See Am. Fed.'n of State, County and Mun. Employees, Council 81 v. State Pub. Employees Relations Bd.,* 2011 WL 2176113 (Del. Super. May 25, 2011) (quoting *Public Water Supply Co. v. DiPasquale*, 735 A.2d 378, 382 (Del. 1999)).
[72] *Wild Meadows MHC, LLC v. Weidman*, 250 A.3d 751, 756 (Del. 2021).

When considering the statute's plain language, because HSCA does not expressly define the disputed *phrase*, the Court must consider what component definitions HSCA does provides and then consider the common, ordinary meaning of the words that are undefined.[73]  At the outset, regarding the term *remedial*, HSCA defines "remedy," but does not define the term "remedial."[74]  Nevertheless, the definition of remedy (a noun) logically applies to the adjective derived from remedy, remedial.  Accordingly, pursuant to HSCA, the term remedial describes such an action to include "*any* action, response or expenditure consistent with the purposes of this chapter."[75]

On the other hand, the terms cost and incurred are not defined in HSCA. Therefore, their common ordinary meanings control.  Cost or costs refers to "an amount paid."[76]   The terms "incur" or "incurred" mean "[t]o become liable or subject to especially as a result of one's actions; bring upon oneself."[77]

Here, combining those terms demonstrates DNREC's ability to recover the costs at issue. Namely, HSCA directs DNREC to prosecute HSCA violations.[78] The General Assembly created the Brownfield Development Program as a tool for DNREC to use when responsible parties are either unwilling or unable to pay directly to remediate brownfields.[79] Accordingly, the bills DNREC paid from the Fund constitute *remedial costs incurred* by DNREC.

---

[73] *See Leatherbury v. Greenspun*, 939 A.2d 1284, 1292 (Del. 2007) (noting "[c]ourts have 'no authority to vary the terms of a statute of clear meaning or ignore mandatory provisions . . .'").
[74] 7 *Del. C.* § 9103(27).
[75] *Id.* (emphasis added).
[76] Am. Heritage Dictionary 329 (2d Ed. 1985).
[77] *Id.* at 653.
[78] *See* 7 *Del. C.* § 9104 (including multiple duties of the Secretary in prosecuting violators pursuant to HSCA).
[79] *See id.* § 9124(1) (providing the Secretary the ability to either plan, study or conduct remedies at a brownfield, or "permit a brownfields developer or other person to plan, study, or conduct, appropriate actions . . . to perform a remedy of a release.").

The Booths cite a single Delaware Supreme Court decision that they believe defines "incurred" in a manner that bars DNREC from recovering their costs. In *Scion Breckenridge Managing Member, LLC v. ASB Allegiance,*[80] the Court examined contractual language that provided for an attorneys' fee recovery by the prevailing party. The examined provision permitted the prevailing party to recover fees "incurred in connection with" the enforcing the contract.[81] That decision turned on the fact that the attorney for the prevailing party provided the services *pro bono*.[82] Accordingly, there were no fees "incurred." In contrast, DNREC undisputedly paid Ten Bears bills for a function required by HSCA with the Fund that is created by HSCA. As a result, the *Scion Breckenridge* decision does not stand for the proposition that applying the common ordinary meaning of the word "incurred" prohibits DNREC from recovering its costs.

Although the Court need only apply the plain language of the statute to reach the appropriate result, the outcome remains the same when examining Section 9109(e) in the context of HSCA's other provisions. Namely, when the Court considers the phrase in context, it first recognizes that Delaware modelled HSCA after the federal Comprehensive Environmental Response Compensation and Liability Act ("CERCLA").[83] Both CERCLA and HSCA impose strict liability on responsible parties which in turn requires those parties to remediate releases of hazardous substances.[84] In fact, the HSCA provision that provides for the strict

---

[80] 68 A.3d 665 (Del. 2013).
[81] *Id.* at 683.
[82] *Id.*
[83] 42 U.S.C. §§ 9601-9675; *Protecting Our Indian River v. Delaware Dept. of Nat. Resources and Envtl. Control*, 2015 WL 5461204, at *6 (Del. Super. Aug. 14, 2015).
[84] *Jersey City Redevelopment Auth. v. PPG Industries, Inc. et al.*, 866 F.2d 1411 (3rd Cir. 1988); *BP Amoco Chem. Co. v. Sun Oil Co.*, 166 F.Supp.2d 984, 989 (D. Del. 2001) (quoting *7 Del. C. §* 9105(a)).

liability of any responsible party, such as the Booths, singularly answers the question. It describes DNREC's broad discretion as follows:

> [the responsible parties are] strictly liable, jointly, and severally, for all costs associated with a release from a facility and for all natural resource damages resulting from the release. The Secretary may recover **all costs** and damages from **all** responsible parties.[85]

Furthermore, the General Assembly explained its intent in other portions of HSCA in a manner that directly supports DNREC's contention. First, the General Assembly recognized that releases of hazardous substances pose an imminent threat to public health and to the environment.[86] The General Assembly also describes the intent behind the Act as one requiring the prompt cleanup of hazardous substances to protect Delaware's citizens' welfare and environment.[87] Finally, the General Assembly included express legislative findings that "private parties should be provided with encouragement to exercise their responsibility to clean up the facilities for which they are responsible, but . . . if they refuse to do so, then the State should conduct the cleanup and recover the costs thereof from the private parties."[88]

To hold polluters liable, HSCA provides DNREC multiple options for remediating a polluted site if a responsible party refuses to or cannot.[89] One such mechanism is the Brownfields Development Program, provided for in Subchapter II of HSCA.[90] The Program permits DNREC to identify a site, create a plan for cleanup, and then contract with private parties to remediate the site so the sites so those parties can develop them.[91] Under HSCA, DNREC may approve a

---

[85] 7 *Del. C.* § 9105(b) (emphasis added).
[86] *Id.* § 9102(a).
[87] *Id.*
[88] *Id.*
[89] *Id.* § 9113(c).
[90] *Id.* §§ 9121-9126.
[91] *Id.* § 9124.

remediation plan offered by a brownfield developer (such as Restoration Worship) who in turn hires an environmental agency (such as Ten Bears) to remediate a polluted site.[92]  Although, in the context of a brownfield development agreement, DNREC delegates the work, DNREC must still approve all work done at the site.[93]

Furthermore, HSCA permits DNREC to pay the brownfield developer *or* the brownfield developer's contractor directly from public funds.[94]  Accordingly, DNREC's direct payments to Ten Bears from the Fund are specifically authorized (and encouraged) by HSCA.  The money does not come from some donated or private source:  rather, it comes directly from the public coffers.[95]  It is a special fund established in the State Treasury containing public money that comes from special assessments, remedial costs recovered from polluters, penalties collected from violators, and money appropriated from time to time by the General Assembly.[96]  Finally, HSCA permits DNREC to use the Fund to make payments for the following:

> [t]o carry out the purposes of [HSCA], including the following activities: (4) [r]eimbursing, or directly paying, any person for reasonable remedial costs incurred with the prior authorization of the Secretary in responding to a hazardous substance remedy . . . **Direct payments may be made to the certified environmental consultant who performed the remedial work** provided that the brownfield developer acknowledges and sign the remedial work invoice.[97]

---

[92] *Id.* § 9125(a); Def. Mot. Summ. J., Ex. 5 ⊩ 29.
[93] 7 *Del. C.* § 9125(b); Delaware Dept. of Nat'l Resources and Envtl. Control, *Regulations Governing Hazardous Substance Cleanup* 1375 § 12.0.
[94] 7 *Del. C.* § 9113(c)(4) (emphasis added).
[95] *Id.* at (b).
[96] *Id.*
[97] *Id.* at (c)(4) (emphasis added).

Section 9109(e) then permits DNREC to sue a responsible a party to collect all remedial costs incurred by DNREC to restore a contaminated property.[98] It likewise permits DNREC to sue a responsible party for noncompliance with the Secretary's Order.[99] Given any reasonable reading of HSCA, to accept the Booths argument would require the Court to ignore the balance of its statutory scheme.

In addition to defining remedy, as described above, HSCA also separately defines the phrase "remedial action."[100] Such an action includes "any action, response, or expenditure . . . to minimize or eliminate any . . . threat posed by the release of hazardous substances . . . including the conducting of studies or monitoring activities."[101] Ten Bears' planning and study work falls firmly within that definition. Accordingly, although HSCA does not expressly define the phrase "remedial costs," the General Assembly's intention to provide broad cost recovery is clear. HSCA authorizes DNREC to recover any payment made from the Fund that addresses harm caused by the release of hazardous substances into the environment.

Once again, Section 9113(c)(4) provides that DNREC may use the Fund to meet HSCA's goals by paying the contractor of a brownfield developer for work it performs.[102] The money comes in large part from costs recovered from violators such as the Booths.[103] To justify payment to a contractor such as Ten Bears, the statute requires DNREC to confirm only two things: (1) that the work performed

---

[98] *See id.* § 9109(a)(3) (providing the Secretary the authority to identify a remedy to be performed by the responsible person at a facility and the timeframe for its completion).
[99] *Id.*
[100] *Id.* § 9103(26).
[101] *Id.* at (27).
[102] *Id.* § 9113.
[103] *Id.* at (c)(4). Indeed, pursuant to this decision, the Booths will be required to pay the amount of the Court's judgment against them into the Fund.

qualifies as "remedial work," and (2) that the brownfield developer has acknowledged and signed the invoices.[104]

In summary, the Booths are responsible parties as a matter of law because they violated a final Order.[105] They did so by failing to remediate the Site voluntarily or enter into an agreement to limit their liability[106] As a result, DNREC used a statutorily available tool to address the releases through its brownfield development agreement with Restoration Worship.[107] To restore the property, Restoration Worship retained the certified environmental consultant, Ten Bears. Ten Bears then performed the investigation and planning necessary to plan future cleanup.[108] DNREC then paid Ten Bears for the work that the Booths should have performed. As a result, the payments to Ten Bears were remedial costs incurred that DNREC may recover from the Booths.

### B. Summary judgment for the *amount* DNREC seeks is appropriate.

The Court next focuses on whether there is a genuine issue of fact regarding the amount DNREC seeks. Here, the Booths have not conceded the issue. Accordingly, the Court considers this matter to be one that the parties do not stipulate to being controlled by undisputed facts. Rather, the Court must view the evidence in the light most favorable to the Booths. When it does, the result is clear.

Here, DNREC meets its initial burden on summary judgment by relying on thirteen invoices that are accompanied by affidavits that certify $105,464.87 in

---

[104] *Id.*
[105] *Garvin*, 2019 WL 3017419, at *5.
[106] Def. Ans. Br. Ex. 21 at 19:19-23. *See* 7 *Del. C.* § 9104(b)(2)(f) (providing potentially responsible parties with a reasonable opportunity to enter into a settlement agreement for a remedy by which the potentially responsible party may propose 1 or more remedial alternatives); *Id.* § 9124(1).
[107] Def. Op. Br. Ex. 5 ("Brownfield Development Agreement").
[108] Pl. Mot. Summ. J., Ex. A, Certification Affidavits.

costs.[109]  An affidavit signed by Richard Greer ("Mr. Greer"), Ten Bears' President, accompanies each invoice.[110]  On each affidavit, Mr. Greer recited that all the work Ten Bears performed "was incurred as an integral part of site remediation for the environmental conditions as required by the DNREC approved work plans for the Site."[111]

Given that DNREC meets its initial burden, the burden shifts to the Booths to demonstrate a triable issue of fact regarding all, or a portion of, the $105,464.87 in damages.  Although the Booths do not concede an amount certain that is due, they identify no evidence of record that supports that the expenses were unreasonable, unrelated, inaccurate, or unnecessary.  To the contrary, their arguments focus only on whether brownfield grant monies constituted remedial costs incurred.  Given the Booths' failure to identify any evidence of record that generates a genuine issue of material fact, DNREC's motion for summary judgment must be granted.

## V. CONCLUSION

For the reasons discussed, the Booths' motion for summary judgment is **Denied** because money paid at the direction of DNREC from the Hazardous Substance Cleanup Fund are remedial costs incurred by DNREC.  Because they are, DNREC's motion for summary judgment must be **Granted**.  Furthermore, because there is no genuine dispute of fact regarding the amount of damages DNREC seeks, judgment is hereby entered in favor of the Secretary of the Department of Natural Resources and against the Booths, jointly and severally, in the amount of $105,464.87.

---

[109] Pl. Mot. Summ. J., Ex. A, Ten Bears Invoices.
[110] *Id. See* Super. Ct. Civ. R. 56(e) (permitting the Court to consider affidavits on a motion for summary judgment).
[111] Pl. Mot. Summ. J., Ex. A, Certification Affidavits.

**IT IS SO ORDERED.**

/s/ Jeffrey J Clark
Resident Judge

JJC:klc
*Via File & ServeXpress*